IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **TONYA KEATON AND**<br>**JAMES MICHAEL KEATON**<br>872 Bottle Lake Road<br>Springfield, ME 04487<br><br>    Plaintiffs,<br><br>    v.<br><br>**MIDDLEBY MARSHALL INC. ind.**<br>**and d/b/a IMPERIAL RANGE**<br>1400 Toastmaster Drive<br>Elgin, IL 60120<br><br>    Defendant. | **CASE NO.:**<br><br><br><br>**JURY TRIAL DEMANDED** |

## **COMPLAINT**

Plaintiffs, Tonya Keaton, and James Michael Keaton by and through undersigned counsel, hereby demand judgment against the above-named Defendant, and state as follows:

## **PARTIES**

1.  Tonya Keaton is a resident of the State of Maine, residing at 872 Bottle Lake Road, Springfield, Maine, 04487.

2.  James Michael Keaton is a resident of the State of Maine, and the husband of Tonya Keaton, residing at 872 Bottle Lake Road, Springfield, Maine, 04487.

3.  At all times relevant hereto, Tonya Keaton, was employed by and working within the scope of her employment for Lee Handy Stop, LLC (hereinafter "Handy Stop"), located at 2789 Lee Road, Lee, Maine, 04448.

4.  Defendant, Middleby Marshall, Inc., individually and doing business as "Imperial Range" (hereinafter "Defendant"), is a corporation organized and existing under the laws of the

State of Illinois with a principal place of business located at 1400 Toastmaster Drive, Elgin, Illinois, 60120.

5. Defendant designs, manufactures, distributes, and sells commercial fryers that are intended for use in commercial kitchens and offers such fryers for sale and/or distributes such fryers throughout the United States, including to businesses and dealers located in the State of Maine.

6. Defendant designed, manufactured, tested, inspected, marketed, sold, and delivered, and otherwise put into the stream of commerce an Imperial brand commercial fryer, identified by its manufacturer's plate as model number FS 40, and serial no 06036208 (hereinafter the "Subject Fryer") with the knowledge and expectation that the Subject Fryer would be used by Maine businesses and/or residents and by individuals who were citizens of the State of Maine.

7. Defendant regularly manufactures fryers, including model FS 40 fryers, and the Subject Fryer, which it distributes throughout the United States, including to businesses located in the state of Maine.

## JURISDICTION AND VENUE

8. Jurisdiction is based on 28 U.S.C. § 1332(a)(1) in that this action involves a controversy between citizens of different states and the amount in controversy exceeds One Hundred thousand dollars ($100,000.00), exclusive of interest and costs.

9. Venue is proper in this district based on 28 U.S.C. §1391 in that the District of Maine is where the accident occurred and is a location where Defendant is subject to personal jurisdiction. This case is properly filed in the Bangor Federal Court under Local Rule 3(b) as it involves a personal injury which Plaintiff suffered in Penobscot County, Maine.

## FACTS

10. Defendant manufactured and sold the Subject Fryer with the intention that it would be used in commercial kitchens and with the knowledge that the Subject Fryer would need to be drained and re-filled with oil on a regular and continuous basis as part of the normal operation of a commercial kitchen.

11. At the time it placed the Subject Fryer into the stream of commerce in Maine, Defendant knew or should have known that the Subject Fryer was unsafe and unreasonably dangerous in that it lacked necessary and essential devices to indicate to the user when the fryer oil was hot.

12. At the time it placed the Subject Fryer into the stream of commerce in Maine, Defendant knew or should have known that the Subject Fryer was unsafe and unreasonably dangerous in that it allowed the oil valve to be open and oil to flow out in the direction of the operator even when the oil was hot and likely to cause serious harm.

13. In the early morning of July 26, 2023, Tonya Keaton was working in the course and scope of her employment and was emptying oil from the fryer into a container when the heat from the oil caused the container to fail, and caused Tonya Keaton to suddenly and unexpectedly slip and fall onto hot oil that covered the floor in and around the Subject Fryer.

14. At the time that Tonya Keaton opened the valve on the fryer to drain it, she was unaware that the oil inside the fryer was dangerously hot, likely to cause injury and likely to cause the oil transfer bucket to melt or leak.

15. As a result of the forgoing incident, Tonya Keaton sustained severe and permanent injuries, including severe burns on her face, head, hands, arms, chest, abdomen, neck,

right leg and right foot as well as additional wounds and scarring on both legs relating to skin grafting surgeries necessitated by her burn injuries.

16. As a result of the foregoing incident, Tonya Keaton has undergone medical treatment and surgical skin grafting procedures for the treatment of her burn injuries, has incurred medical bills and will incur additional medical bills in the future for the treatment of her injuries.

17. As a result of the foregoing incident, Tonya Keaton has experienced serious and debilitating mental anguish and post-traumatic stress disorder and has incurred medical and therapeutic bills and will incur additional medical and therapeutic bills in the future for the treatment of her mental injury and post-traumatic stress disorder.

18. As a result of the foregoing incident, Tonya Keaton was disabled from work and has sustained lost wages and will continue to be disabled from work in the future and will incur additional lost wages in the future and a loss of future earning capacity.

19. As a result of the foregoing incident, Tonya Keaton has endured extreme pain and suffering and may continue to experience pain and suffering in the future.

20. As a result of the foregoing incident, Tonya Keaton suffered a loss of life's enjoyment, and may suffer further loss of life enjoyment in the future.

21. As a result of the foregoing incident, Tonya Keaton has sustained permanent scarring and disfigurement with associated humiliation and embarrassment, permanent sunlight sensitivity, and a permanent loss of range of motion and function in her left arm, which is her dominant arm that may lead to further disability in the future.

## COUNT I
## NEGLIGENCE
## <u>TONYA KEATON v. MIDDLEBY MARSHALL, INC.</u>

22. Plaintiffs incorporate herein by reference all the foregoing paragraphs as though more fully set forth at length.

23. Defendant designed, manufactured, tested, inspected, marketed, sold, delivered, and otherwise put the Subject Fryer into the stream of commerce.

24. Defendant negligently designed, manufactured, and sold the Subject Fryer, such that it was defective, inherently and unreasonably dangerous, unsafe, unsuitable for use, not of merchantable quality, and not fit for its intended use or for the general and particular purposes for which it was designed, manufactured, marketed, and sold, and as such was likely to cause injury.

25. The incident described above was caused solely by the negligent and careless acts of Defendant, including, but not limited to the following:

    a. failing to design, manufacture, and/or sell the Subject Fryer in a manner that would allow it to be operated safely during its normal and/or anticipated use and operation;

    b. designing, manufacturing and/or selling the Subject Fryer without any indicator or any type of notification to inform or warn the user when the oil in the fryer was hot and unsafe to drain;

    c. designing, manufacturing and/or selling the Subject Fryer with an oil drain valve that was capable of being opened while the oil in the fryer was hot, unsafe to handle, and likely to cause serious injury in the event of a spill;

    d. designing, manufacturing and/or selling the Subject Fryer with an oil drainage system that allowed for hot oil to drain out in front of the fryer in an uncontrolled

      fashion, rather than draining into a self-contained drain tank for subsequent safe transfer;

e. failing to provide and/or properly post sufficient instructions and warnings concerning how to safely drain oil from the Subject Fryer and that oil in the Subject Fryer was likely to become hot very quickly and to remain dangerously hot for a substantial period of time after the fryer is turned off;

f. failing to provide other visual or audio warning to alert users when the oil in the Subject Fryer is hot;

g. designing manufacturing and/or selling the Subject Fryer without providing a safe and non-hazardous method for draining oil from the Subject Fryer;

h. designing manufacturing, and/or selling the Subject Fryer without warnings and instructions that the Subject Fryer lacked essential safeguards to prevent operators from being injured;

i. failing to provide adequate instructions and warnings concerning the substantial risk of serious harm that could result during the normal operation of the Subject Fryer; and

j. failing to provide a compatible container to safely drain oil from the Subject Fryer without exposing users and others working around the fryer to harm.

    26.    As a further result of the negligence and carelessness of Defendant, the Subject Fryer did not comply with industry customs, procedures, and safety standards and as such was defective, inherently and unreasonably dangerous, unsafe, unsuitable for use, not of merchantable quality, and not fit for its intended uses or for the general and particular purposes for which it was designed, manufactured, marketed, and sold.

27.     Defendant negligently instructed as to the use, operation, maintenance, and service of the Subject Fryer, negligently failed to provide complete and adequate warnings as to the use, operation, maintenance, and service of the Subject Fryer, and negligently failed to provide complete and adequate warnings as to the consequences of falling or stepping off of the sulky platform.

28.     At the time the Product left the hands of Defendant, the Subject Fryer was defective, unreasonably and inherently unstable, dangerous, and not safe or suitable for use by the plaintiff.

29.     As a direct and proximate result of the negligence and carelessness of Defendant, Tonya Keaton sustained serious injuries and damages as detailed above.

WHEREFORE, with respect to each of the Counts set forth herein, Plaintiff Tonya Keaton demands judgment against the defendant, in an amount in excess of $100,000, plus pre-judgment and post-judgment interest, and for costs herein expended.

### COUNT II – STRICT LAIBILITY
### TONYA KEATON v. MIDDLEBY MARSHALL, INC.

30.     Plaintiffs incorporate herein by reference the foregoing paragraphs as though more fully set forth at length.

31.     The Subject Fryer was expected to be used in commercial kitchens by kitchen workers and cooks, such as Tonya Keaton.

32.     On the date of the incident the Subject Fryer was without significant change in the condition in which it was originally manufactured and sold by defendant.

33.     Defendant manufactured, imported, distributed, and/or sold the Subject Fryer in a defective condition, unreasonably dangerous to its ultimate user including those defects described above.

34. As a result of Defendant's manufacture, importation, distribution and/or sale of the defective Subject Fryer, Tonya Keaton has been injured in body and in spirit, requiring extensive medical treatment, as set forth more fully above.

35. Defendant, as manufacturer, importer, distributor, and/or seller of the Subject Fryer is strictly liable pursuant tor 14 M.R.S.A. § 221 for the damages suffered by Plaintiff.

WHEREFORE, with respect to each of the Counts set forth herein, Plaintiff Tonya Keaton demands judgment against the defendant, in an amount in excess of $100,000, plus pre-judgment and post-judgment interest, and for costs herein expended.

### COUNT III – BREACH OF WARRANTY

36. Plaintiffs incorporate herein by reference the foregoing paragraphs as though more fully set forth at length.

37. Defendant, as seller of the involved Subject Fryer, acted as a merchant.

38. The Subject Fryer sold by Defendant was not merchantable as presented.

39. Defendant breached its implied warranty of merchantability.

40. Tonya Keaton was injured as a result of Defendant's breach of the implied warranty of merchantability.

41. Tonya Keaton has been injured in body and in spirit, requiring extensive medical treatment, as set forth more fully above.

WHEREFORE, with respect to each of the Counts set forth herein, Plaintiff Tonya Keaton demands judgment against the defendant, in an amount in excess of $100,000, plus pre-judgment and post-judgment interest, and for costs herein expended.

## COUNT IV – LOSS OF CONSORTIUM

42. Plaintiffs incorporate herein by reference the foregoing paragraphs as though more fully set forth at length.

43. As a result of the injuries caused to Plaintiff Tonya Keaton, James Michael Keaton was caused to suffer the loss of support, society, love, affection, companionship, comfort, services, and intimate relations, of his spouse and said injuries detrimentally affected the spousal relationship.

WHEREFORE, with respect to each of the Counts set forth herein, Plaintiffs Tonya Keaton and James Michael Keaton demand judgment against the defendant, in an amount in excess of $100,000, plus pre-judgment and post-judgment interest, and for costs herein expended.

## DEMAND FOR JURY TRIAL

Pursuant to F.R. Civ. P. 38(b), Plaintiffs hereby demand a jury trial on all counts of this Complaint.

Respectfully Submitted,

Dated:  June 20, 2024               /s/ *Erik M. P. Black*
                                    Erik M.P. Black, Esq., Bar No 4733
                                    Gilbert Law Offices
                                    88 Hammond Street, Suite 321
                                    P.O. Box 2339
                                    Bangor, ME 04402-2339
                                    (207) 947-2223
                                    empb@yourlawpartner.com